296 Ga. 388
FINAL COPY

S14A1371. WALLACE v. THE STATE.

BLACKWELL, Justice.

Edward Wallace was tried by a Fulton County jury and convicted of murder and other crimes, all in connection with the fatal shooting of Kyle Moore. Wallace appeals, contending that the evidence is legally insufficient to sustain his convictions, that the trial court erred when it admitted certain evidence at trial, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The crimes were committed on May 3, 2007. Along with Maurice Aikens and Ladasha Eison, Wallace was indicted on June 19, 2007, and each was charged with malice murder, three counts of felony murder, one count of armed robbery, aggravated assault, and unlawful possession of a firearm during the commission of a felony. In addition, Wallace and Aikens were charged with unlawful possession of a firearm by a convicted felon. A redacted indictment was later filed, omitting one of the felony murder counts. Wallace and Aikens were tried together, beginning on February 2, 2009, and Eison was ordered to testify pursuant to a grant of immunity. The jury returned its verdict four days later, finding both Wallace and Aikens guilty on all counts. Wallace and Aikens each was sentenced to a term of imprisonment for life for malice murder, a consecutive term of imprisonment for life for armed robbery, and consecutive terms of imprisonment for five years each for unlawful possession of a firearm during the commission of a felony and unlawful possession of a firearm by a convicted felon. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault merged with the armed robbery. Eison pled guilty to aggravated assault and was sentenced as a first offender to twelve years, with five years commuted to time served and the balance to be served on probation. Wallace timely filed a motion for new trial on March

1. Viewed in the light most favorable to the verdict, the evidence shows that on the evening of May 3, 2007, Wallace, Maurice Aikens, and Ladasha Eison made plans to rob someone at a bus stop near a MARTA station. When Moore — an African-American high school student who was unknown to the assailants — arrived at the bus stop, Wallace and Aikens ran up to him and took his empty wallet and cell phone at gunpoint. Moore then was shot multiple times, and he died from his wounds soon afterwards. Eison told her co-workers about the robbery, identifying Wallace as the shooter. Two days after the shooting, Wallace had the words "unknown killer" tattooed onto his arm and confessed to his girlfriend that he had shot Moore. Ballistics testing confirmed that a 9mm handgun found by police officers in Wallace's bedroom was the gun with which Moore was killed. During a custodial interview, Wallace admitted that he had purchased that gun a few months earlier. Police also found rap lyrics written recently by Wallace, in which he said that he targeted black people and

5, 2009, and he amended it on August 16, 2010. The trial court denied his motion on September 29, 2011. Wallace timely filed a notice of appeal on October 12, 2011, and he amended it on February 15, 2012 and again on June 1, 2012. The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

2

that, if one would not act, Wallace would "lay 'em flat" and "put eight holes in his back."

Wallace points to some conflicts in the evidence and questions the credibility of several witnesses, including Eison. But when we consider the legal sufficiency of the evidence, "we must view the evidence in the light most favorable to the verdict and leave questions of credibility and the resolution of conflicts in the evidence to the jury." Bradley v. State, 292 Ga. 607, 609 (1) (a) (740 SE2d 100) (2013). So viewed, we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Wallace was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Wallace contends that the trial court improperly allowed Eison to testify about his character. When asked why she and Aikens did not want Wallace to know where they went after the murder, she testified that they "don't trust [Wallace]." Wallace's lawyer asked to approach the bench, the jury was excused, and the lawyer moved for a mistrial. Finding that Eison's answer only incidentally placed Wallace's character into evidence, the trial court denied his

motion for mistrial but cautioned the prosecutor to "steer clear of that area." Wallace's lawyer neither renewed the motion for mistrial nor asked for any additional corrective action. To the contrary, he told the trial court that he was "not requesting any type of curative instructions or anything like that." The trial court agreed not to highlight the issue any further, the jury returned, and the prosecutor resumed her examination of Eison without revisiting the issue. "Where a defendant objects and moves for a mistrial during the examination of a witness, and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion; otherwise, the issue is waived." Wilkins v. State, 261 Ga. App. 856, 858 (2) (583 SE2d 905) (2003) (citation and punctuation omitted). Because Wallace failed to renew his motion for mistrial following the trial court's cautionary direction to the prosecutor and instead announced his decision not to request any further corrective action, Wallace has waived this issue on appeal. See id.; Frazier v. State, 247 Ga. App. 500, 501-502 (544 SE2d 198) (2001). See also Phillips v. State, 269 Ga. App. 619, 628 (6) (a) (604 SE2d 520) (2004).

Even if the trial court's warning to the prosecutor did not amount to corrective action that triggered an obligation on Wallace's part to renew his

motion for mistrial, we find no error. The trial court did not abuse its discretion when it denied Wallace's motion for mistrial, as the testimony about not trusting Wallace was ambiguous and did not indicate that he had committed a crime. See McIlwain v. State, 287 Ga. 115, 117 (4) (694 SE2d 657) (2010). Moreover, that testimony was relevant to explain the actions of Eison and Aikens after witnessing Wallace shoot Moore, and it was not inadmissible because it incidentally put Wallace's character in issue. See Cannon v. State, 288 Ga. 225, 228 (4) (702 SE2d 845) (2010).

3. Wallace also asserts that the trial court erred when it failed to suppress Wallace's custodial statement as involuntary. "When a court considers whether a statement was voluntary, it must look to the totality of the circumstances, and at trial, the State bears the burden of proving by a preponderance of the evidence that a statement was, in fact, voluntary." Edenfield v. State, 293 Ga. 370, 374 (2) (744 SE2d 738) (2013). Wallace's statement was involuntary, he claims, because he was under the influence of cocaine that he had ingested, was fidgety,

5

was seen breaking items in the interrogation room, and did not waive his Miranda[2] rights in writing.

Wallace did tell a detective at the time of his interview that he had ingested cocaine a few hours before he provided the statement. But the detective testified that Wallace did not appear to be under the influence of cocaine or any other drugs, alcohol, or medication, that he appeared to understand his rights and waived them orally, and that he was coherent and answered questions appropriately. See Krause v. State, 286 Ga. 745, 751 (7) (691 SE2d 211) (2010); Philmore v. State, 263 Ga. 67, 68 (2) (428 SE2d 329) (1993). "The mere fact that [Wallace] may have been somewhat intoxicated at the time of the interview does not automatically render evidence thereof inadmissible." Norton v. State, 293 Ga. 332, 335 (2) (745 SE2d 630) (2013) (citations omitted). See also Jones v. State, 285 Ga. 328, 329-330 (2) (676 SE2d 225) (2009). Although Wallace at times showed some agitation that the detective indicated was normal for such an interview, there was no evidence that he broke items in the interrogation room. And Wallace "was not required to waive his Miranda rights in writing."

---

[2] See Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

<u>Davis v. State</u>, 292 Ga. App. 782, 785 (2) (a) (666 SE2d 56) (2008) (citation omitted). See also <u>Sosniak v. State</u>, 287 Ga. 279, 282 (1) (A) (2) (695 SE2d 604) (2010). The detective's testimony was sufficient to show that Wallace knowingly and voluntarily waived his <u>Miranda</u> rights and gave his statement, and the trial court did not err when it admitted the statement.

4. Wallace further contends that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Wallace must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. <u>Strickland v. Washington</u>, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Wallace must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Wallace must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

7

confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Wallace falls far short of carrying it.[3]

(a) Wallace claims that his lawyer should have filed a motion to sever his trial from that of his co-defendant, Maurice Aikens. Wallace, however, "has not shown either that a motion should or would have been granted." Dulcio v. State, 292 Ga. 645, 654 (3) (h) (740 SE2d 574) (2013). His case was prejudiced, Wallace says, because the evidence against Aikens was overwhelming while the evidence against Wallace was circumstantial. But the evidence of Wallace's guilt is not merely circumstantial, nor is it weaker than the evidence of Aikens's

---

[3] "Figuratively speaking, the hill that must be climbed to make out a claim of ineffective assistance is almost always high and steep. In this case, however, it is especially high and steep because [Wallace] failed to put on any evidence in support of his claim — including any testimony from his trial lawyer — at the hearing on his motion for new trial." Butler v. State, 292 Ga. 400, 405 (3), n. 8 (738 SE2d 74) (2013). As we have observed before, "[i]t is extremely difficult to overcome the presumption of reasonable professional assistance where counsel does not testify." Maxwell v. State, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citations and punctuation omitted). See also Morgan v. State, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). Moreover, Wallace has presented his assertions of ineffective assistance — both in the trial court and on appeal — in a cursory manner. Even so, to the extent possible, we will briefly review each instance in which Wallace contends that his trial lawyer was ineffective to determine whether the record reveals deficient performance and prejudice. See Maxwell, 290 Ga. at 575 (2).

guilt. And even if the evidence against Aikens were more substantial than the evidence against Wallace, that fact would not itself require severance. See id. "What is more, [Wallace] fails to demonstrate antagonistic defenses, that evidence admissible only against [Aikens] was improperly used against [Wallace], or that the joint trial created any confusion." Id. Accordingly, Wallace cannot establish either a deficiency of his lawyer or prejudice in the failure to request severance. See id.

(b) Wallace also claims that his lawyer should have filed a motion to suppress identification evidence. Although Wallace refers generally to a lack of descriptions by witnesses, he does not specify which witnesses gave objectionable testimony or why it was inadmissible. "It is not this Court's job to cull the record on behalf of the [appellant] to find alleged errors." Maxwell v. State, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citation omitted). Wallace has failed to carry his burden to show deficient performance or prejudice as to this claim. See Mitchell v. State, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012).

(c) Wallace complains that his lawyer placed Wallace's character in issue during opening statement when the lawyer invoked a racial stereotype about his

own client. The lawyer said that Wallace "likened himself to be a rapper. It seems to be very popular now. Young black men want to become rappers, and so they get all these tattoos." Although lawyers ought not unnecessarily inject the race of any party into the proceedings, Wallace has failed to show how this particular statement was unreasonable or prejudicial. See Stephens v. State, 208 Ga. App. 620, 622 (2) (e) (431 SE2d 422) (1993) (although racial distinctions are offensive and will be closely scrutinized, "we cannot say that every such reference is prejudicial as a matter of law; to call it a deficiency of counsel as a matter of law might deprive a defendant of an important defense in some cases"). At trial, his lawyer had to deal with expected evidence of the "unknown killer" tattoo and the rap lyrics written after the murder. The apparent strategy of the lawyer was to attempt to portray these things as commonplace for an aspiring rap artist, not admissions of guilt. "It is reasonable strategy for defense counsel to place disagreeable information before the jury in a manner which he can control rather than allow the subject matter to be presented in a more damaging fashion." Terry v. State, 284 Ga. 119, 122 (2) (d) (663 SE2d 704) (2008) (citations omitted). The fact that Wallace now disagrees with his lawyer's tactical choices during opening statement does not require a finding of

10

ineffective assistance of counsel. See Mize v. State, 269 Ga. 646, 655 (11) (501 SE2d 219) (1998).

(d) Last, Wallace argues that his lawyer failed to object to the admission of Moore's phone records during the testimony of an assistant store manager for a cell phone company. The State did not lay a proper foundation, Wallace claims, to establish that the records admitted into evidence were admissible business records. But the witness testified that, as part of her duties, she kept, maintained, interpreted, and itemized phone records for her employer, that the document accurately shows the call details for Moore's phone number on the date of the murder, and that those records are ordinarily kept in the course of the company's business. Although Wallace does not make clear what he believes this foundation was lacking, he does say that the witness should testify from personal knowledge. It appears, however, that an objection based on the asserted lack of a foundation would not have been meritorious. See Santana v. State, 283 Ga. App. 696, 698 (1) (642 SE2d 390) (2007) ("The witness's lack of personal knowledge regarding how the records were created does not render them inadmissible, but merely affects the weight given to the evidence.") (citations omitted). In any event, Wallace has made no showing that a proper foundation

11

could not have been laid if any additional foundation was necessary. See Jackson v. State, 288 Ga. App. 432, 434 (1) (b) (654 SE2d 232) (2007). Wallace's lawyer likely made a tactical decision not to object because the State would have asked the witness any additional questions that were necessary to establish the foundation. See Cupe v. State, 253 Ga. App. 851, 855 (3) (a) (560 SE2d 700) (2002). See also Brown v. State, 307 Ga. App. 797, 807 (5) (d) (706 SE2d 170) (2011) (when and how to raise foundation objections is generally a matter of trial strategy). Accordingly, Wallace has failed to show either that his lawyer's actions were not in the course of trial strategy or that there is a reasonable probability that the result of trial would have been different if the lawyer had objected. See Woodall v. State, 261 Ga. App. 213, 216 (4) (582 SE2d 466) (2003).

Judgment affirmed. All the Justices concur.


Decided January 20, 2015.

Murder. Fulton Superior Court. Before Judge Brasher.

Brandon Lewis, for appellant.

12

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.